## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| **CHRIS BROCK,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. V-11-36** |
| | § | |
| **CITY OF REFUGIO, TEXAS**, *et al*, | § | |
| | § | |
| **Defendants.** | § | |

### MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant City of Refugio, Texas' ("the City") Motion to Dismiss (Dkt. No. 12), to which Plaintiff Chris Brock ("Plaintiff") has responded (Dkt. No. 18) and the City has replied (Dkt. No. 24). Having carefully considered the motion, response, reply, record, and applicable law, the Court is of the opinion that the City's motion should be **DENIED**.

### I. Factual Background

According to the facts set forth in Plaintiff's Original Complaint (Dkt. No. 1), Plaintiff was hired by the City as chief of police in 2000. Under City Ordinance §13-3 (Ord. of 6-15-1953, Supp. No. 12), the police chief is appointed for a two-year term and may be removed "at the discretion of the council for due cause." Beginning in January 2000, the contract between Plaintiff and the City was renewed for each two-year term and was up for renewal in May 2011.

Toward the end of May 2009, Defendant Ruben Garcia ("Ruben"), a person with whom Plaintiff had problems during his tenure as police chief, was voted out of office as a City councilman. Ruben communicated with Plaintiff via e-mail, blaming Plaintiff for his loss in the election. Around the same time, Plaintiff was approached by an agent from the Federal Bureau of Investigation (FBI) questioning transactions in Plaintiff's personal bank account.

1

In late June 2009, City police officers Fernando Garcia ("Fernando") and Dean Ochoa ("Ochoa) showed up unannounced at Plaintiff's office, along with a Texas Ranger and an FBI agent. They detained Plaintiff for six and one-half hours, demanding to search his office and home, though they did not have a warrant and never obtained one. With the assistance and participation of Defendants Ruben, Fernando, and Ochoa, over the next few months, law enforcement personnel continued to harass and falsely accuse Plaintiff and to report the false accusations to the public generally and to the City Council.

On or about September 4, 2009, Plaintiff was arrested and charged on three indictments for a total of five felony charges. Plaintiff believes that Ruben, Fernando, and Ochoa were instrumental in the false charges being filed against him. The same day, the City Council met in an executive session, at which time the council members informed Plaintiff that "they did not agree with the indictment and believed Plaintiff had not committed any criminal activity" but nonetheless placed Plaintiff on administrative leave without pay. The City Council then appointed Fernando as the interim police chief and promoted Ochoa as second in command of the police department. According to Plaintiff, both men are under the age of 40 years and are less qualified than the Plaintiff for the position of police chief.

Roughly a year later, in the summer of 2010, Ochoa and Garcia were being investigated on allegations of wrongful conduct that Plaintiff claims were more egregious than the allegations against him. Unlike Plaintiff, however, Ochoa and Garcia were placed on administrative leave with pay and were allowed to receive benefits while the investigations were pending.

On June 10, 2010, Plaintiff filed his charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that his being placed on administrative leave without pay or benefits constituted discrimination because of his age (over 40 years) and national origin (Caucasian), and that the City had created a hostile work environment prior to his wrongful

suspension. At the August 2010 City Council meeting, Ochoa and Fernando were given the opportunity to resign, which they accepted. That same month, the City Council terminated Plaintiff and appointed Andy Lopez as chief of police. Plaintiff then amended his charge of discrimination to include retaliation for filing a charge of discrimination.

## II. Procedural Background

Plaintiff filed the instant action on May 6, 2011, alleging causes of action against the City for violations of the Equal Employment Opportunity Act, 42 U.S.C. §2000e *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq.*, and for breach of duty pursuant to City Ordinance §13-3 (Ord. of 6-15-1953, Supp. No. 12). (Compl. ¶¶ 27—45, 57.) Plaintiff also alleges causes of action against Ruben, Fernando, and Ochoa (the "individual Defendants") in their individual capacities under Texas common law for tortious interference with Plaintiff's existing contract with the City and for tortious interference with Plaintiff's prospective business relationship with the City. (Compl. ¶¶ 58 & 59.) Plaintiff has also sued the City and the individual Defendants pursuant to 42 U.S.C. §1983 for violating his constitutional rights under the Fifth and Fourteenth Amendments. (Compl. ¶¶ 46—53 .)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the City now moves to dismiss "all claims involving allegations of tortious interference with contract, false accusations, and other tortious claims that were made both against the City of Refugio and the individual Defendants . . . based on Plaintiff's election of remedies against the City." (Dkt. No. 12 at 1—2.)

## III. 12(b)(6) Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss an action for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion, a court must accept the plaintiff's allegations as true and draw all reasonable inferences in her favor.  *See Leatherman v. Tarrant County Narcotics*

*Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *United States v. Gaubert*, 499 U.S. 315, 327 (1991). A court may not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citing *St. Paul Ins. Co. of Bellaire, Texas v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991)).

Dismissal can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 737—38 (S.D. Tex. 1998). While a complaint need not contain detailed factual allegations to survive a 12(b)(6) motion, the Supreme Court has held that a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (abrogating the *Conley v. Gibson*, 355 U.S. 41 (1957) 'no set of facts' standard as "an incomplete, negative gloss on an accepted pleading standard") (citations omitted). Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Id.*; *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007).

**IV. Analysis**

In support of its motion to dismiss all tort claims against the individual Defendants, the City cites Section 101.106(e) of the Texas Civil Practice and Remedies Code, which provides: "If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE § 101.106(e).

Had Plaintiff alleged any "claims involving allegations of tortious interference with contract, false accusations, and other tortious claims . . . both against the City of Refugio and the

4

individual Defendants," then the Court would agree that such claims against the individual Defendants should be dismissed under § 101.106(e). *See City of Webster v. Myers*, —S.W.3d—, 2011 WL 5104419, *6 (Tex. App.—Houston [1 Dist.] Oct. 27, 2011) ("[I]f a plaintiff brings any state common law tort claim against both a governmental unit and its employees, subsection 101.106(e) will allow the employee defendants to be dismissed on the motion of the governmental unit."). However, Plaintiff has not alleged any common law tort claims against the City.

The City nonetheless argues that because Plaintiff's claims against the City and the individual Defendants both relate to his employment with the City, he must decide whether to sue the City solely or the individual Defendants solely, but he cannot sue both. The Court disagrees, finding the court's opinion in *Kelemen v. Elliot*, 260 S.W.3d 518 (Tex. App.—Houston [1st Dist.] 2008, no pet.), on point.

In *Kelemen*, a former Texas City police officer was terminated after reporting that she was sexually assaulted by a fellow police officer. *Kelemen*, 260 S.W.3d at 520. The plaintiff sued Texas City alleging claims for gender discrimination in violation of the Texas Commission on Human Rights Act, TEX. LAB. CODE §§ 21.051 & 21.055, and for violations of the Texas Whistleblower Act, TEX. GOV'T CODE § 554.002. *Id.* The plaintiff also alleged claims against the offending police officer under Texas common law for assault and official oppression. *Id.* Like the City here, Texas City moved to dismiss the fellow officer under § 101.106(e). *Id.* In refusing to dismiss the individual officer, the court explained:

> Under section 101.106(e), any suit against [the officer] must be dismissed "[i]f a suit is filed under this chapter against both" the City and [the officer]. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(e). Here, section 101.106(e) does not require dismissal of the claims against [the officer] because no suit has been filed under the Tort Claims Act against both the City and [the officer]. *See id.* In other words, the claims that, under *Garcia*, would fall under the Tort Claims Act, were filed against [the officer] but were not filed against the City. *See Garcia*, 253

S.W.3d at 657—58. Similarly, the claims filed by Plaintiff against the City for statutory violations were not filed against [the officer]. *See id.* The claims against the City were not claims filed under the Tort Claims Act because they were claims that assert statutory violations that are separate and apart from the Tort Claims Act.

*Kelemen*, 260 S.W.3d at 522 (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653

(Tex. 2008)).

The Court finds that here, as in *Kelemen*, Plaintiff segregates the statutory claims he asserts against the City under Title VII, the ADEA, and City Ordinance § 13-3 from the claims that he asserts against the individual Defendants under Texas common law. As such, Section 101.106(e) does not require dismissal of the individual Defendants.

**V. Conclusion**

For the reasons set forth above, Defendant City of Refugio, Texas' Motion to Dismiss (Dkt. No. 12) is **DENIED**.

It is so **ORDERED**.

**SIGNED** this 1st day of February, 2012.

JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE